STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Appeal of | } | |
| Shane Farrell | } | Docket No. 74-5-99 Vtec |
|  | } | |

DECISION and ORDER

Appellant-Applicant Shane Farrell appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Jericho, denying conditional use approval for a golf driving range. Appellant is represented by Vincent A. Paradis, Esq. The following individuals entered their appearance representing themselves: Jeffrey B. White, Virginia Shores, Monique Gilbert, Todd Barker, Alexander P. Anderson, Wendell Farrell, and Francesca Fraser Darling. Stephen R. Crampton, Esq., is an attorney and appeared and represented himself and Susan C. Crampton. The Town of Jericho is represented by Gregg H. Wilson, Esq.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit alone, by agreement with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant owns an approximately 13-acre parcel of land with 415 feet of frontage on the south side of Governor Peck Road in the Agricultural zoning district of Jericho. The adjacent properties to each side and across the road are single family residential properties, as are most of the surrounding properties in the neighborhood. Livestock, such as horses or llamas, is raised on a small scale on some of the neighborhood properties. One property in the area contains a greenhouse specializing in the growing of Bonsai plants (slow-growing miniature trees). The character of the surrounding neighborhood is essentially rural residential, despite the zone classification as Agricultural.

Appellant's lot measures (by scale from Exhibit C) 400 feet across, measured

1

perpendicular to the side lot lines nearest to the roadside. The lot is 1800 feet in depth, of which the clear open distance from the tee area to the beginning of the woods is about 900 feet (300 yards). The lot's width tapers somewhat away from the road, so that it measures 370 feet across at a line 440 feet back from the proposed location of the most northerly tee pad. The topography of the ground slopes down to the northwest, towards the White property, which is at a lower elevation of approximately 20 feet lower than Appellant's property. A utility right-of-way extends diagonally in a westerly direction across Appellant's property from the easterly corner by the roadside onto the White property. One utility pole is located approximately centrally along this line on Appellant's property; another is located approximately 150 feet along the line onto the White property. Both utility poles are clearly visible from the proposed tee locations.

Appellant proposes to construct a golf driving range consisting of fifteen 8' x 8' tee pads arranged in a shallow V-shape in the easterly corner of the property, an 8' x 12' storage building with natural siding and extension walls to the rear screening a portable toilet. He proposes to place distance markers in the field at 50 yard increments out to 300 yards. A sidewalk is proposed to run between the parking lot and the tees, protected from the parking area by a line of boulders. A parking lot is proposed with 18 parking spaces (one handicapped) and a single 26-foot-wide curb cut onto Governor Peck Road. After-hours vehicular access to the parking lot will be prevented by posts and a chain across the access.

Appellant proposes hours of operation from 8:00 a.m. to dusk, weather permitting, from April to such time in the fall as it becomes too cold to use the facility. The facility will thus not be open at least five months of the year. Appellant expects most of his weekday customers to use the facility from 3:00 to 6:00 p.m. No water supply, plumbing, lighting, telephone service, food service or amplified sound system is proposed for the property. Appellant proposes that the attendant use a cellular telephone for service to the property. A portable toilet will be provided and will be serviced at least weekly, or as necessary when the driving range is in operation. Appellant anticipates a maximum of 800 to 1,000 golf balls to be in use; they are rented out in buckets of three sizes from 25 per bucket up to 50 per bucket.

Appellant proposes to use a compact 25 horsepower tractor, with attachments for mowing and mechanical golf ball retrieval. Appellant expects to need to mow the facility up to twice a week, and to use the mechanical ball retriever two to three times daily, and is willing to accept such a limit as a condition of approval. Appellant does not plan to use lawn chemicals, pesticides or herbicides after the range is initially established.

The mowing and golf ball retrieval equipment causes noise levels similar to that of a small agricultural tractor or large residential riding mower. The sound of a golf club hitting a golf ball from 50 feet away is an average 55dBA, with an instantaneous spike of 65dBA. The average level does not in itself exceed the decibel levels normally experienced from residential or agricultural properties, but at busy times of the day or week, especially during the late afternoon to early evening hours and on weekends, the instantaneous impact spike levels will exceed the type of sound experienced from residential or agricultural properties (except perhaps when firewood is being split). These impact sounds will be multiplied by up to the 15 participants and during the peak afternoon and weekend hours they could be continual, repetitive and obtrusive to the neighboring dwelling. The sound, and possibly also the actual words, of the voices of the golfers at the facility also will be audible from the White property.

Appellant proposes to landscape the facility with plantings on a raised berm to screen the parking lot from the road, a belt of trees on the southeast property line, and a belt of trees curving around from the roadside to the northwest of the parking lot and tee #15. Beyond the screening shown on Exhibit C and approved as part of the site plan, Appellant proposes to extend the screening from Tee 15 an additional forty feet, and is willing to accept a condition requiring additional screening if necessary. Appellant also proposes to leave a 50-foot-wide buffer strip of tall grass along the White property boundary to prevent the rolling of golf balls downhill onto the White property once such balls have struck the ground.

The Whites keep horses on their property; the horse pasture is an open fenced area located to the rear of the White house. The White house has a deck constructed on the rear of the house, up a half flight of stairs from the front ground level, overlooking both the White horse pasture and Appellant's property. The White house is served by a

3

semicircular driveway with two entrances onto Governor Peck Road.  Ingestion of a golf ball is likely to be fatal to a horse.

If a golf ball is struck in a straight trajectory, it can travel as much as approximately 300 yards (900 feet).  The usual distance of travel for the majority of balls is approximately 75 to 100 yards (150 to 300 feet).  The distance from the closest tee to the White property is approximately 200 feet.  Golfers, especially those feeling the need of practicing at a local driving range, are not always able to cause the golf ball to travel in the intended straight trajectory, but instead may "slice" or "hook" the ball, causing it to travel to the left or the right side of the intended trajectory, although those shots also usually do not travel as far as a straight shot.  If an object such as a tree or utility pole is located the field of view of a golfer practicing shots, the golfer may attempt to aim so as to strike the object in the field of view.  Even without considering the likelihood of golfers intentionally aiming from tees #1 through #8 at the utility pole on Appellant's property, or from any of the tees at the utility pole on the White property, or intentionally aiming at any of the horses in the field on the White property, we find that golf balls are likely to be hit beyond Appellant's boundary onto the White property.

Governor Peck Road is a two-lane paved town road connecting Brown's Trace Road with Vermont Route 117 in Richmond, near Exit 11 of Interstate 89.  This route is a route for commuter traffic traveling between the Jericho/Underhill area and Interstate 89, and is heavily used by commuters during the daily rush hours.  Appellant expects commuters on this route in the afternoon rush hour to stop at and use his facility.  The daily volume of traffic on Governor Peck Road is 2,200 vehicles, with 308 vehicles in the peak hour, which is 4:45 to 5:45 p.m.  This facility would generate 19 vehicles per hour.  Governor Peck Road has a level of service C, which would not be affected by the additional traffic attributable to Appellant's facility, even though the projected 19 vehicles an hour is 19 times the rate for a single family residence of one vehicle an hour.

Governor Peck Road has a speed limit of 35 miles per hour.   It curves approximately 385 feet to the east of Appellant's proposed driveway, and there is a hill approximately 500 feet to the west, but these sight distances are adequate in both directions for traffic to enter and exit this facility for traffic traveling at the speed limit.  Mr.

White has experienced unsafe conditions from traffic exceeding the speed limit, while he was exiting or seeking to enter his own driveway.

A golf driving range is a conditional use in this zoning district. To be approved, Appellant's proposal must meet all of the standards in §301.4.3 of the Zoning Regulations, either as proposed or with additional reasonable safeguards and conditions to assure that the criteria will be met. §301.4.6. If it cannot do so, it must be disapproved. §301.4.5.

The Jericho Zoning Regulations contain two specific criteria for conditional use approval which differ somewhat from and are more stringent than the conditional use criteria of many other towns, as they give a preference to existing adjacent uses permitted by the regulations. Section 301.4.3.4(a) requires specifically that "the continued operation of adjacent uses as permitted in this ordinance will not be adversely affected by the nature of the proposed use." Section 301.4.3.2 provides that the character of the area not be adversely affected, and specifically requires in subsection 301.4.3.2(b) that the proposed use "will be in general harmony with the character of the surrounding neighborhood <u>and will not detract from abutting residences or other property</u>." (Emphasis added.)

Appellant's proposal fails to meet both of these standards, and no additional reasonable safeguards or conditions could assure that these criteria could be met. Although it is possible that a small golf driving range could be constructed to be compatible with an otherwise basically rural residential neighborhood and could be constructed to be compatible with the use of adjacent residential properties, it would have to be on property a good deal wider than Appellant's property, or with very different topography and with large trees already existing near the side boundaries, so that the golf driving range use could be effectively separated from the surrounding residential uses.

The continued operation of both the residential adjacent use and the keeping of horses on the adjacent property, both of which are allowed under the zoning regulations, will be adversely affected by the nature of the proposed golf driving range, §301.4.3.4(a), and will detract from abutting residences. 301.4.3.2(b). The golf balls pose a risk to the horses' being struck and pose a risk of fatal results if a golf ball is ingested by a horse. The repetitive, continual sounds of golf clubs striking golf balls would detract from the Whites' and other nearby residences' use of their decks and their enjoyment of the outdoor

5

areas of their property, especially during the evening hours, even if it did not rise to the level of an actual nuisance. §301.4.3.2(a). For these same reasons, this particular proposal for a golf driving range will not be in general harmony with the character of the surrounding neighborhood, which is rural residential and has no other businesses serving a drive-in clientele of up to 18 vehicles.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's application for conditional use approval for a golf driving range is DENIED.

Dated at Barre, Vermont, this 7th day of April, 2000.

_____
Merideth Wright
Environmental Judge